## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**CHAD EUGENE CALDWELL,**<br><br>          **Defendant.** | **MEMORANDUM DECISION AND ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A)**<br><br>**Case No. 2:03-CR-325-DAK**<br>**Case No. 2:03-CR-696-DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendant's Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant requests that the court grant compassionate release under three-step process articulated by the Tenth Circuit in *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir 2021) based on the change in the mandatory career offender guideline and other extraordinary and compelling circumstances that make him eligible for relief. The United States filed an opposition to Defendant's motion, and the United States Probation Office filed a recommendation that the court deny the motion. Defendant then filed a reply in support of his motion. The court considers the motion fully briefed.

Defendant has two related underlying criminal cases based on a Utah bank robbery and a California bank robbery. On October 9, 2003, Defendant pled guilty to both bank robberies and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 2113(d) and § 924(c). On December 22, 2003, the court sentenced Defendant 188 months for the Utah robbery, 84 months for the § 924(c) brandishing charge, and 151 months for the California robbery, 88 months of which was consecutive to, and 63 months was concurrent with, the sentence for the Utah robbery. Defendant's total sentence was 360 months of incarceration.

The Pre-Sentence Reports completed for Defendants two cases designated Defendant as a career offender.  That guideline increased his criminal history to Category VI and impacted his mandatory guideline ranges.    At the time of sentencing, this designation of Defendant as a career offender was correct.  Defendant had a prior federal robbery conviction that counted as a career offender predicate.  Defendant also had a prior California state law conviction for "burglary of a dwelling" that qualified as a predicate offense under United States Sentencing Guideline §4B1.2 (2003).  The court sentenced Defendant at the lowest level for each mandatory guideline.

A year after the court sentenced Defendant, the guidelines became advisory rather than mandatory.  *United States v. Booker*, 543 U.S. 220 (2005).  In 2013, the Supreme Court held that burglary under California law does not qualify as a violent felony under the categorical approach.  *Descamps v. United States*, 570 U.S. 254, 277 (2013).  To the extent that burglary could have been considered a predicate offense based on the residual clause, the residual clause was deemed unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015).  In 2016, the U.S. Sentencing Commission removed burglary from the list of career offender predicates.  U.S.S.G. App. C, amend. 798.

Under current law, Defendant would not qualify as a career offender.  His guideline range would be 161-180 months for both robberies. Defendant would have an adjusted offense level of 22, which would be increased by 2 units under U.S.S.G. § 3D1.4 grouping.  With the same level reduction for acceptance of responsibility that Defendant previously received, minus three units, his total offense level is 21.  Therefore, his guideline range would be 77-96 months, plus a minimum mandatory 84 months for the brandishing charge under § 924(c), which totals 161-180 months.

Given that this court routinely sentences at the low end of the guideline range, this court would sentence Defendant to 161 months if it sentenced him today.   Basically 200 months less than his actual sentence from 2003.  Defendant is approaching 20 years of incarceration for crimes he would be sentenced to 13.4 years under the current sentencing regime.  And that 13.4 year sentence would be a "straight up" sentence that did not involve anything shaved off for entering into a voluntary plea.  With his current and expected good time credits, Defendant will not fully serve his 2003 sentence until December 9, 2028.

As an initial matter, the United States argues that this court should not treat Defendant's motion as a motion for compassionate release under 18 U.S.C. § 3582(c)(1), but as a second or successive § 2255 petition.  However, Defendant's motion does not argue that his sentence was incorrect when it was entered or that a change in the law requires a retroactive change to his sentence.  Defendant's motion is similar to other compassionate release motions the court has considered, asking for an individualized retroactive change to his sentence based on a change in the law that is not generally retroactive and other extraordinary and compelling reasons.  As such, the court concludes that Defendant's motion should be analyzed under the Tenth Circuit's decisions in *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021); *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021).

"Federal Courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One exception is contained in 18 U.S.C. § 3582(c)(1).  The First Step Act modified § 3582(c)(1)(A) to allow a federal prisoner to file a motion for compassionate release directly with the court after the defendant has exhausted administrative remedies with the Bureau of Prisons ("BOP").  *United States v. Willis*, 382 F.

Supp. 3d 1185, 1187 (D.N.M. 2019).  In this case, the United States does not dispute that Defendant meets the exhaustion requirement for a compassionate release.

Under § 3582(c)(1)(A), a court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that "extraordinary and compelling reasons warrant such a reduction; and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  Based on the plain language of this statute, the Tenth Circuit adopted a three-step test for granting a motion for reduction of sentence: "(1) the district finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021);  *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021).

Defendant argues that there are extraordinary and compelling reasons for a reduction in his sentence based on a change in the law with respect to his career offender status and mandatory guideline requirements.  Defendant acknowledges that these changes in the law have not been made retroactive.  However, Defendant contends that this lack of retroactivity is irrelevant if the court finds the change in the law combined with other factors to be a compelling and extraordinary basis for purposes of compassionate release.  The court agrees that the Tenth Circuit has found that the lack of retroactive relief to all Defendants does not "prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to *some* of those defendants."  *McGee*, 992 F.3d at 1047.

In *Maumau*, the Tenth Circuit held that "district courts, in applying the first part of §
3582(c)(1)(A)'s statutory test, have the authority to determine for themselves what constitutes
'extraordinary and compelling reasons,' but that this authority is effectively circumscribed by the
second part of the statutory test, i.e., the requirement that a district court find that a reduction is
consistent with applicable policy statements issued by the Sentencing Commission pursuant to
§§ 994(a)(2)(C) and (t)."  993 F.3d at 834.  The Sentencing Commission has not issued a policy
statement in response to the First Step Act's provision allowing Defendants to bring a motion for
sentencing reduction directly with the court and the policy statement applicable to motions
brought by the BOP is not applicable to direct motions.  *Id.* at 837.  Therefore, the Sentencing
Commission's current policy statement does not "constrain district courts' discretion to consider
whether any reasons are extraordinary and compelling."  *Id.*

Although there currently appears to be little constraining district courts from reducing
pre-First Step Act mandatory sentences, in *McGee,* the Tenth Circuit explained that the fact that
a defendant is serving a pre-First Step Act sentence—in that case a mandatory life sentence—
"cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)."
992 F.3d at 1048. The court concluded "that it can only be the combination of such a sentence
and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons'
for purposes of § 3582(c)(1)(A)(i)."  *Id.*

In *Maumau*, the Tenth Circuit upheld the district court's reduction of the defendant's
stacked § 924(c) sentences because the district court's "finding of 'extraordinary and compelling
reasons' was based on its individualized review of all the circumstances of Maumau's case and
its conclusion 'that a combination of factors' warranted relief."  993 F.3d at 837.  The
combination of factors included Maumau's young age and lack of criminal history at the time of

sentencing, the "incredible" length of his stacked mandatory sentences under § 924(c); his sentence in relation to his co-defendants' sentences, the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau would not face such a long sentence today. *Id.*

In this case, Defendant similarly asserts that a combination of factors presents extraordinary and compelling circumstances for a sentence reduction, and the court agrees. Under current law, Defendant would not qualify as a career offender. His guideline range would be 161-180 months. Today, the court would sentence Defendant to no more than 161 months. Defendant's sentence under the prior sentencing system more than doubled what his sentence would be today—30 to 13.4 years. This change in the potential sentences is extraordinary. Defendant has served nearly 20 years for crimes he would be sentenced to no more than 13.4 years under the current sentencing system. *See United States v. Johnson*, 2022 WL 1510544, at *6 (S.D.W. Va. May 12, 2022) (§ 3582 reasonably encompasses changes that result in "grossly disproportionate sentencing," such as when a person would no longer qualify as a career offender); *United States v. Etzey*, No. 09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) ("District courts in this circuit have universally affirmed that the fact that a defendant, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving constitutes an extraordinary and compelling reason justifying potential sentence reduction under § 3582(c)(i)(A)(i)").

As in *Maumau*, however, there must be something other than just the sentencing disparity that makes a case extraordinary and compelling. Defendant points to his abusive childhood, his history of untreated mental health problems, his family support, his faith, and his

extensive rehabilitation programing during incarceration. All these factors combined with the change in sentence length work together to support a reduction in Defendant's sentence.

The court has reviewed the supporting materials to Defendant's motion and finds them extraordinary and compelling. Defendant's transformation while incarcerated is remarkable. Defendant's only infraction in 20 years of incarceration was for a fight he engaged in so as not to join a prison gang. Instead of joining a prison gang, throughout his incarceration, Defendant has engaged in an extensive amount of program offerings to improve himself and make himself capable of entering the labor force upon release. Defendant is certified to become a barber or welder. While he needs to complete additional programs to gain certification for these trades in California, his twin sister and her family are willing to house and help him financially until he can support himself.

Defendant has also completed educational programming in history, OSHA certification, job interviewing, Spanish, self-sufficiency, driving, ceramics, finding alternatives to violence, guitar, crochet, sports injuries, bicycling, anatomy, automotive repair, wellness, and walking. He has held jobs as an orderly, steamfitter, barber, maintenance worker, recreation crew member, and commissary worker.

Another factor the court finds compelling is Defendant's close relationship with his family. The other adults in his life all remark on his transformation during incarceration. He has a close relationship with his twin sister and her family. Defendant's son and nieces and nephews also remark on his interest in them and his regular communications with them. He has consistently recognized their birthdays and holidays. They all comment on his remorse for his prior criminal acts and his regret over the mistakes he made when he was young. He actively encourages the young family members to abide by the law. Also, very poignantly, his son Mitch

is 22 years old and had his mother pass away two years ago. Mitch states that he has no parent

on the outside and has to do things on his own. While a 22-year-old is an adult, most have a

parent to readily turn to when they are in need. He states that his father tries to be there for him

as much as he can—he never misses a birthday or holiday, he sends him things if he can, and he

calls—and apologizes for not being able to be there for him in person. Defendant not only

appears to have a strong family network to support him upon release, but release would enable

Defendant to support his son more fully as well. The court finds these family circumstances to

be compelling contributing factors for reducing Defendant's sentence.

While rehabilitation alone is not extraordinary and compelling, and a change in the law

regarding sentencing alone is not extraordinary and compelling, the court finds that the two

together can reach that standard. *United States v. Blankenship*, 2022 WL 2036280, at *4

(S.D.W. Va. June 6, 2022) (finding that "disparity between the sentence [defendant] received and

the one he would have received had he not been designated as a career offender, combined with

his disciplinary and rehabilitative record while incarcerated, supports a finding of extraordinary

and compelling circumstances that warrant release under § 3582.") In his twenty years of

incarceration, Defendant has had only one self-defensive infraction in his disciplinary record and

appears to have exhausted the available programming for his rehabilitation. At this point, he

needs to build upon that programming in the community. The court notes that Defendant has

other factors to combine with the sentencing disparity based on the change in the law, his

exemplary disciplinary record, and his successful rehabilitation efforts —such as an

understanding regarding the need to treat his mental health issues and, importantly, his strong

family connections, and his compelling need to help his son, who has lost his mother. The court

concludes that all these factors combined provide an extraordinary and compelling basis for reducing Defendant's sentence under § 3582.

The court further finds that the § 3553(a) factors support a reduction of Defendant's sentence. The court notes that Defendant's crimes were serious. But it also recognizes that he has already served more than the high-end of the current applicable guideline range, which is 180 months or 15 years. The 20 years that Defendant has served, therefore, adequately reflects the seriousness of his crimes. The currently applicable 15-year sentence would also be an adequate sentence for deterrence purposes to the extent that long sentences offer a deterrence effect.

The court further finds that Defendant's 30-year sentence is not necessary for protecting the public. Defendant's lack of infractions, extensive rehabilitation, and his relationship with friends and family all demonstrate that he is very much a changed man. He also has a stable home upon release and has been offered financial assistance until he can support himself. Defendant will not be released to fend for himself and potentially return to "old ways" to support himself. He is trained for two trades and is interested in pursuing both. Moreover, the court believes Defendant and his family when they say that Defendant has consistently stated that he no desire to return to his "old ways." The court realizes that Defendant's crimes were serious, but given his rehabilitation, ability to provide for himself upon release, and family support, the court does not view Defendant as a present danger to the community.

Defendant's extensive rehabilitation demonstrates that he is ready to re-enter society and the workforce. Defendant does not need more programming in the prison system, he needs to build on that work and education in prison to gain stable employment in the community. Defendant appears to be ready to contribute to his community. Defendant has been making payments on his restitution while in prison even though his pay has been minimal. By gaining

employment in the community, he will increase his ability to make restitution payments. Therefore, an earlier release will benefit his victims and society.  Moreover, Defendant went into prison as a 30-year-old, but he will leave as a 50-year-old, who needs to start a career and start planning for retirement.  Based on the information before the court, he has the skills, ability, and circumstances to do so.  That is not only a personal benefit.  Society will benefit when Defendant is able to pay down his restitution and start contributing and planning for his own retirement.

The court concludes that the § 3553(a) factors support no more than the approximately 20-year sentence Defendant has served.  Although Defendant seeks immediate release, the court believes that Defendant should be released ninety days from the date of this Order.  Twenty years of incarceration is substantial, and Defendant will need some time mentally to prepare for implementing his release plans.  The court believes that release in ninety days from the date of this Order allows BOP to plan for Defendant's release in an orderly fashion and gives Defendant the opportunity to plan as well.  Defendant  has two programs he is interested in pursuing upon release--for welding and barbering.  Ninety days should enable him to more fully investigate the specifics of both those programs so that he can start as soon as possible upon release.  Ninety days will also allow U.S. Probation to prepare for Defendant's supervised release.  United States Probation has already approved of his sister's residence as an appropriate residence upon release. But other preparation is also necessary.  Given that Defendant will be released to live with his sister in California, he should be released to California, not Utah.  And his supervised release should occur in California, not Utah.

Therefore, based on the court's finding of extraordinary and compelling reasons, the court's analysis of the § 3553(a) factors, and the lack of any applicable guidance from the Sentencing Commission, the court reduces Defendant's sentence to time served plus ninety days

10

from the date of this Order.  The court will maintain the same conditions of supervised release imposed in Defendant's initial sentence.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [ECF No. 30] is GRANTED IN PART AND DENIED IN PART.  The court reduces Defendant's previously imposed sentence of 360 months to time served plus ninety (90) days from the date of this Order.  Defendant's conditions of supervised release are unchanged.

Dated this 13th day of February, 2023.

BY THE COURT:

DALE A. KIMBALL
United States District Judge